UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARTHA HARRIS,

        Plaintiff,

v.                                     Case No.  8:09-cv-2537-T-TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

        Defendant.
_____/

**O R D E R**

      The Plaintiff seeks judicial review of the decision finding medical improvement and

only a closed period of disability.  She argues error in the ALJ's finding of medical

improvement and in his failure to properly credit the evidence from her treating doctor.  She

urges that her case be reversed and remanded for further consideration or, alternatively, an

award of benefits.  For the reasons set out herein, the decision is affirmed.

A.

      Plaintiff was fifty-three years old at the time of her administrative hearing in April

2009.  Plaintiff has a twelfth-grade education.  She stands 5'4" tall and weighed 250 pounds at

the time of her administrative hearing.  Her past relevant work was as a receptionist, school

bus driver, and office manager.  She also had prior work as a seamstress.  Plaintiff applied for

disability benefits in October 2006, alleging disability as of April 1, 2006, by reason of a fever

of unknown origin, sepsis, failed back surgery syndrome, diabetes, hypertension, depression, obesity, and abdominal pain. The Plaintiff's application was denied originally and on reconsideration.

A de novo hearing was conducted by an Administrative Law Judge (ALJ) on April 21, 2009. Plaintiff, who was represented by counsel at the hearing, testified that she is unable to work due to pain in her middle back that radiates down into her hips, down her right leg, and into her toes. She underwent back surgery in June 2004. Her back and leg pain is treated with epidural injections two or three times a year, pain medication, and muscle relaxers. The injections offer relief for about 4 to 6 weeks. The medications cause side effects including constipation for which she takes laxatives. However, this then causes her to be in the bathroom all day. According to Plaintiff, her back and leg pain occurs daily and is relieved somewhat by taking medication, laying down, and using ice packs.

As for her other impairments, Plaintiff testified that she previously had unexplained high fevers of unknown origin causing her to go into sepsis shock and renal failure in July 2006. She treated at Bartow Hospital, Winter Haven Hospital, and Brandon Hospital. She also underwent extensive testing at Moffitt Cancer Center. She still experiences low-grade fevers on an occasional basis, but it does not require hospitalization. Plaintiff testified that her diabetes and high blood pressure currently are being controlled by medication. As for her depression, Plaintiff testified she feels hopeless. She sought treatment in 2006 for mental health issues, but is not treating now because she cannot afford the insurance co-pay.

Regarding her daily activities and physical capacity, Plaintiff stated that she can stand for fifteen to twenty minutes at a time and for about one hour total in an eight-hour day due to pain in her low back and right leg.  She has been walking with the use of a cane for six to eight months.  Plaintiff estimated that she lays down between 11:00 a.m. and 4:30 p.m. each day due to her pain.  She is able to drive, but will only go short distances once per week.  As for household chores, she will occasionally do dishes or laundry, but for the most part her husband or daughter takes care of things.  Plaintiff is able to take care of her own personal needs but cannot put on her socks and shoes.  Bending is difficult because of problems with her back.  She used to enjoy shopping, four-wheeling, and cross stitching but is unable to do these activities because of pain in her low back and leg.  (R. 29-46).

The ALJ next took testimony from Jane Beougher, a vocational expert (VE).  In pertinent part, the VE testified on a hypothetical question that assumed a person of Plaintiff's age, education and work history capable of light exertional work with environmental limitations of avoiding extreme temperatures, wetness, humidity, noise and vibration, fumes, odors, dust and gases, poor ventilation, and exposure to hazards such as moving machinery and unprotected heights.  On this hypothetical, the VE opined that such individual could perform all of Plaintiff's past relevant work except for bus driver.  Adding certain additional postural limitations did not change that opinion.  However, if such hypothetical individual could sit no more than three hours, stand no more than an hour, and walk no more than thirty minutes in an eight-hour day, there would be no work available in the local or national

economy because of an inability to work a full eight-hour day. Plaintiff's counsel did not question the ALJ. (R. 46-50).

On July 2, 2009, the ALJ issued a partially favorable decision finding that Plaintiff's sepsis with unexplained fevers, lumbar spine disorder status post surgery, diabetes mellitus type II, obesity and hypertension, rendered her disabled for the period from April 1, 2006, through July 26, 2007, because she was unable to engage in sustained work activity. Thereafter, her condition improved related to her sepsis, low back condition and hypertension such that she had the residual functional capacity to perform a restricted range of light exertional work beginning July 27, 2007. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work except as a bus driver from that date forward. Upon this conclusion, the Plaintiff was determined to be not disabled as of July 27, 2007. (R. 13-24). The Appeals Council denied Plaintiff's request for review.

## B.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

4

Here, the ALJ initially employed the five step evaluation process dictated by 20 C.F.R. § 1520 and concluded Plaintiff was disabled for a closed period through July 26, 2007, but not thereafter.  Although under a disability through that date, applying the provisions of 20 C.F.R. § 404.1594, the ALJ found evidence of medical improvement thereafter related to her ability to work.  Under the regulations, a claimant's disability benefits may be terminated if there has been any medical improvement, if the improvement is related to the ability to work, and if the claimant is currently able to engage in substantial gainful activity.  20 C.F.R. § 404.1594(a).  "Medical improvement" is "any decrease in the medical severity of . . . impairment(s) [that] was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled."  20 C.F.R. § 404.1594(b)(1).  A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)."  And, a medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities."  20 C.F.R. § 404.1594(b)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d

5

1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

Ultimately, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

6

C.

Plaintiff initially complains that "there is no basis in the record to support a finding of improvement in [her] condition after July 27, 2006," (sic) as evidenced by the records from treating doctor, Edward Lubin, M.D. By her account, although her blood pressure was under control and the unexplained fevers had ceased to trouble her, these were not the conditions which were disabling her. Rather, it was her back problems and associated neuropathy which continued to be disabling conditions as supported by the medical evidence of monthly treatment for years with Dr. Lubin.

The Commissioner responds that the ALJ properly found medical improvement after July 26, 2007. Her fevers of unknown origin and sepsis were listed as disabling impairments, and by Plaintiff's own testimony, the fevers had stopped. Although Plaintiff complains that she was disabled by back pain, she had virtually no treatment for back pain until February 2007 and records from Dr. Lubin do not suggest that Plaintiff is more limited than the ALJ found.

On this claim, I find that the ALJ's conclusion of medical improvement is supported by substantial evidence. As the decision reflects, the ALJ concluded that the combination of Plaintiff's sepsis with unexplained fevers, lumbar spine disorder status post surgery, diabetes mellitus type II, obesity and hypertension limited her to sedentary exertional work. Because she was deemed incapable of sustained work activity for a full eight-hour workday on a regular and consistent basis, the ALJ found her disabled through June 26, 2007. (R. 18-19). However, as of July 27, 2007, the ALJ determined her condition had improved such that she

7

was capable of a restricted range of light exertional work.  In particular, the ALJ found that her

sepsis and unexplained fevers had subsided by that date and that her back pain was better and

her hypertension and diabetes were well controlled by medications.  (R. 20).  As a basis for

these findings, the ALJ cited the medical records from Dr. Krish Shroff, M.D., David R.

Puentes, D.C., Dr. Sam Korley, M.D., as well as the notes from Dr. Edward Lubin, M.D. (R.

20-22).  A fair review of these records supports the ALJ's conclusion on medical

improvement.

        As noted above, "medical improvement" is any decrease in the medical severity of

impairments present at the time of the most recent favorable medical decision that the claimant

was disabled.  A determination of medical improvement is based on improvement in the

symptoms, signs and/or laboratory findings associated with the impairments.  Such

improvement is related to an individual's ability to work when there has been a decrease in the

severity of the impairments and an increase in the functional capacity to do basic work

activities.  In light of this standard and upon my review of the medical evidence, I find that

substantial evidence supports the conclusion for medical improvement related to Plaintiff's

ability to work and Plaintiff is not entitled to relief on her first claim.[1]

---

        [1]For example, the July 27, 2007, report from Dr. Shroff, a treating doctor, expressly
noted her unexplained fever and medical work-up over a couple of years and stated,
"fortunately, now, she is feeling better and doesn't have any more fevers."  (R. 694).  Notes
concerning a lumbar laminectomy and disectomy in 2004 by Dr. Michael Ziebelman suggest a
good result, despite Plaintiff's claims to the contrary and in any event, she made no claim of
disability for nearly two years after her surgery.  The subsequent treatment notes from Dr.
Puentes, her chiropractor, clearly suggest that her back condition responded well to his care
and improved.  *See, e.g.,* (R. 355-58).  The records from Dr. Korley, who saw Plaintiff later in
2008, give little to no support at all for any disabling low back condition.  *See* (R. 606-38).

8

By her second claim, she urges that the ALJ failed to give proper weight to the evidence from Dr. Luben who treated her for three years and who assessed her limited to such an extent that she could not work.  By her final claim, Plaintiff argues that the ALJ had no substantial basis for dismissing her complaints of pain and fatigue as demonstrated by Dr. Lubin.  In response, the Commissioner argues that the ALJ properly evaluated Dr. Lubin's opinion and gave it little weight because it was inconsistent with and unsupported by his own records and the other evidence.  Likewise, the Commissioner urges that the ALJ properly discounted her subjective complaints based on medical evidence.

Regarding the evidence from Dr. Lubin, in April 2009, he completed a medical source statement concerning Plaintiff's functional capacity which, in essence, found Plaintiff so limited in lifting, sitting, standing, and walking that she could not perform any work.  *See* (R. 603-05).  By Plaintiff's account, she treated with this doctor for three years without any lasting improvement and yet the ALJ chose to give his opinion little weight, and erroneously discounted the assessment on a finding that her condition improved and there was a lack of clinical findings to support the assessment.

In this circuit, when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is

---

And, as discussed below, even the notes for Dr. Lubin, Plaintiff's pain management doctor, reflect reports of decreased pain  and increased function over time.  (R. 699- 750).  Clinical findings by Dr. Lubin before and after July 2007 repeatedly note she was neurologically intact with good range of motion in her neck and back, without muscle tenderness or swelling in the joints.  *Id*.  As for her hypertension and diabetes, Dr. Shroff's records indicate that both were fairly well-controlled with medication.

shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  *Lewis*, 125 F.3d at 1440.  Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record.  *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Here, the decision reflects the ALJ's conclusion that Dr. Lubin's assessment was "overly extreme" and "inconsistent" with the medical evidence after July 27, 2007.  By the ALJ's review, since that date, Plaintiff showed improvement in her condition; she had not suffered a recurrence of fevers; and the record failed to reveal marked diminishment in range of motion, muscle atrophy, or other neurological deficits.  (R. 22).  In addressing the doctor's findings from March 2009, just one month prior to his assessment, the ALJ noted that musculoskeletal examination was essentially normal, there was no edema, cyanosis or clubbing of the lower extremities, peripheral pulses were not absent, there was no tenderness of thoracolumbar muscles, no trigger points, no swelling of the joints and that Plaintiff was neurologically intact.  (R. 21)   These conclusions followed the ALJ's review of all the

10

medical evidence and by my consideration of that record, are supported by substantial evidence and offer an adequate basis for discounting Dr. Lubin's assessment.

Neither Dr. Lubin's own notes or those of other treating or examining doctors support the highly limiting restrictions imposed by this assessment. Thus, as noted above, even during the period of disability, the treating chiropractor noted improvement in Plaintiff's pain complaints. The records from Dr. Korley, who treated Plaintiff thereafter in 2008 and 2009, reflect clinical findings related to the back and extremities and neurological findings which are essentially normal. And, Dr. Lubin's own clinical findings appear inconsistent with the extreme limitations he assessed. Thus, notes from his office reflect routine findings that Plaintiff was neurologically intact, with good neck and lumbar spine range of motion, without muscle tenderness, without trigger points and without swelling in the joints. Furthermore, the notes suggest that Plaintiff's pain was maintained and lessened by the medication regimen prescribed.[2] Under the applicable standard, the ALJ may discount the opinions of a treating doctor on explicit findings. Here, when the whole of the decision is considered, the ALJ has articulated adequate good cause to reject the disabling functional assessment by Dr. Lubin.

For similar reasons, I conclude that the ALJ properly assessed Plaintiff's subjective complaints under the applicable standard (R. 19) and discounted the same on the bases of the medical evidence to the extent that she claimed total disability.[3] On this appeal, Plaintiff

---

[2]Among other notations in his March 16, 2009, report, Dr. Lubin indicated that pain intensity was moderate, level of functioning was medium to high, pain relief was moderate, and that Plaintiff can tolerate her current pain therapy. (R. 699).

[3]In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability

simply fails to demonstrate error in the ALJ's conclusion that her fevers and pain improved

with care and treatment and did not prevent her from performing a limited range of light

exertional work on and after July 27, 2007, consistent with the RFC assessed by the ALJ.

Apart from generally citing to Dr. Lubin's pain management, she offers no contrary medical

evidence to contradict the ALJ's conclusions that her claimed limitations were overstated as

was Dr. Lubin's assessment when the whole of the evidence was considered.  She is not

entitled to relief on this claim.

D.

Plaintiff does not challenge the balance of the ALJ's evaluation of her claim nor

contend that the testimony of the VE that she could still perform her past sedentary and light

exertional work under the ALJ's RFC assessment is in error.  Accordingly, the decision of the

Commissioner of the United States Social Security Administration is in accordance with the

correct legal standards and is otherwise supported by substantial evidence.  The decision is

---

through subjective symptoms.  By this standard, there must be evidence of an underlying
medical condition and either objective medical evidence that confirms the severity of the
alleged symptom arising from the condition or evidence that the objectively determined
medical condition is of such severity that it can be reasonably expected to give rise to the
alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v.
Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A claimant's subjective testimony supported
by medical evidence that satisfies the standard is itself sufficient to support a finding of
disability.  *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  If the ALJ determines
not to credit subjective testimony, he must articulate explicit and adequate reasons for his
decision.  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health &
Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).  Here, the stated reasons for discounting
Plaintiff's subjective complaints was the lack of support in the medical record.

affirmed. The Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 21st day of September 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record